UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| BENEFITS IN A CARD, LLC, | ) | |
| BENEFITS GUARANTY, LLC and | ) | |
| GARNISHMENT SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 6:06-cv-03655-GRA |
| | ) | |
| -vs- | ) | **ORDER** |
| | ) | (written opinion) |
| TALX CORPORATION and | ) | |
| WILLIAM CANFIELD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' motion to compel arbitration of the plaintiffs' claims and to dismiss this case. For the reasons stated below, the motion is granted.

FACTUAL BACKGROUND

This action arises out of a dispute between Carl Stecker ("Stecker") and Defendant TALX ("TALX") with regard to Stecker's October 2004 stock sale of Net Profit, Inc. ("Net Profit") to TALX. Stecker is the principal owner, manager, president and chief executive officer of each of the plaintiff corporations. Compl. ¶ 7. The stock sale was memorialized in an Acquisition Agreement dated October 25, 2004 ("Acquisition Agreement"), which is referenced and relied upon in the Complaint and which is at the foundation of the dispute between the parties.

1

The Complaint alleges that, "pursuant to the sale of Net Profit," Joseph Denny ("Denny"), former Chief Operating Officer of Net Profit, Inc., entered into an Employment Agreement with TALX whereby he would oversee the operation of Net Profit following the acquisition. Compl. ¶11. The Acquisition Agreement specifically references and includes the Denny Employment Agreement. *See* Declaration of Thomas C. Werner ("Werner Decl.") ¶ 3, Exh. A, Table of Contents Tab 8; Exh. B. Plaintiffs allege that TALX did not need Denny's services, and therefore told Stecker and Plaintiff Benefits In A Card that Denny could go to work for Plaintiff. Compl. ¶12, ¶15. Plaintiffs further allege that when they hired Denny as their Chief Operating Officer, Compl. ¶16, TALX told Mr. Denny he would no longer be afforded inactive status, Compl. ¶18, and ordered him to return to TALX in an attempt to gain leverage against Stecker in a dispute over the purchase of Net Profit. Compl. ¶19.

Section 10.9 of the Acquisition Agreement contains a broad arbitration provision which states in relevant part that:

> "(a)   The Parties hereto will attempt in good faith to resolve *any* controversy or claim between them *arising out of or relating to this Agreement . . .* promptly by negotiations."
>
> (b)    If the matter has not been resolved by negotiation within fifteen (15) days . . ., the Dispute shall be settled by arbitration in accordance within the commercial arbitration rules of the American Arbitration Association ("AAA"). Unless otherwise agreed by the parties, the arbitration proceeding . . . shall take place . . . in the St. Louis, Missouri metropolitan area if initiated by Seller, and shall be administered by the AAA."

2

Acquisition Agreement, § 10.9(a)-(b).

Stecker has already invoked this same arbitration clause in connection with a related dispute he has with TALX arising out of the Acquisition Agreement. On November 24, 2006, Stecker filed a Demand for Arbitration seeking $814,642 from TALX based on "breach of contract; failure to pay amounts due; and bad faith." In doing so, he invoked the same section of the Acquisition Agreement as quoted above. *See* Compl ¶18; Werner Decl., ¶4, Ex. C. Defendants now seek to do what Stecker himself has already done: invoke the mandatory arbitration provision in the Acquisition Agreement.

## ANALYSIS

The Federal Arbitration Act requires arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. The United States Supreme Court has made clear that federal policy favors arbitration and that arbitration clauses should be enforced. *See, e.g.*, *Mitsubishi Motors Corp. v. Selex Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .").

Similarly, the Fourth Circuit has repeatedly compelled arbitration where, as here, the arbitration clause applies to any dispute "arising from or related to" the agreement. *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001); *Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262, 265-66 (4th Cir. 2000); *American*

*Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). In doing so, the Court of Appeals has followed *Mitsubishi*, where the clause in question provided for the arbitration of all disputes "which may arise between [the parties] out of or in relation to" the parties' agreement. 473 U.S. at 617. Section 10.9 of the Acquisition Agreement encompasses "any" dispute "arising from or related to" the TALX acquisition of Net Profit from Stecker. The Complaint and referenced documents make clear that the present dispute arises out of and relates to the Acquisition Agreement containing the arbitration clause.

The Plaintiffs contend that they should not be required to arbitrate because they did not sign the Acquisition Agreement. Generally, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960). While a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, "[i]t does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960). As the Fourth Circuit has held, "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). "Well-established common law principles dictate that in an appropriate case a

4

nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Id*. at 416-17.

The Fourth Circuit has repeatedly recognized that non-signatories to an agreement containing an arbitration provision may be compelled to arbitrate under several different legal tests. In *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988), the Court held that, where the claims between a non-signatory parent and its signatory subsidiary "are based on the same facts and are inherently inseparable," both parties may be compelled to arbitrate. *Id*. at 320. In *Schwabedissen*, 206 F.3d at 417, the Fourth Circuit confirmed "the same facts and inherently inseparable" standard of *J.J. Ryan*.

That standard applies here. While the three named corporate Plaintiffs in this case are non-signatories to the Acquisition Agreement, their position is no different than Stecker's as signatory. Stecker is the "principal owner, manager, president, and chief executive officer" of each of the Plaintiff companies. Indeed, the Complaint specifically alleges that "Defendant TALX agreed with Plaintiff BIC *and Carl Stecker* that, given Mr. Denny's inactive status, he could accept employment as Chief Operating Officer for both Plaintiffs" (Compl. ¶ 15) (emphasis added). The Complaint further alleges that TALX breached this agreement in order to obtain leverage in its dispute with Stecker. TALX's alleged statement and alleged breach are "based on the same facts and [are] inherently inseparable" from what was

allegedly said and done to Stecker. Accordingly, the named Plaintiffs may be compelled to arbitrate on that basis alone.

The Fourth Circuit, following decisions from the Second and Fifth Circuits, has also held that non-signatory shareholders may be bound by a corporation's agreement to arbitrate where, as here, those shareholders control the activities of the corporation. *Long*, 248 F.3d at 319-321. As "principal owner, manager, president and chief executive officer" of the Plaintiff corporations, Stecker necessarily controls them. Since he is bound to arbitrate, so are they.

These principles apply whether the non-signatory is seeking to enforce an arbitration provision against the signatory or, as in this case, the signatory is seeking to enforce such a clause against the non-signatory. *See Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) ("[J]ust as estoppel can apply against a signatory to an arbitration clause who sues a nonsignatory thereto, it can also apply against a nonsignatory who sues a signatory."); *Smith v. Cato*, No. 3:05CV99, 2006 U.S. Dist. LEXIS 31935, at *22 (W.D.N.C. May 9, 2006) ("in an appropriate case, . . . a non-signatory can enforce, *or be bound by,* an arbitration provision within a contract executed by other parties").

Courts have also compelled arbitration of non-signatories under a third legal test which examines whether the non-signatory is seeking to derive a direct benefit from an agreement containing a broad arbitration provision. Where such a benefit is being sought, a non-signatory is estopped from refusing to comply with the

6

arbitration provision. *See Am. Bankers*, 453 F.3d at 628 ("[I]t is unfair for a party to rely on a contract when it works to its advantage and repudiate it when it works to its disadvantage." (citation omitted)); *Schwabedissen*, 206 F.3d at 417-418 ("In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him'"); *see also JJ Ryan*, 863 F.2d at 321 (explaining that compelling arbitration of a parent and a subsidiary because facts and allegations raised in a lawsuit are inherently inseparable can also be established through principles of equitable estoppel).  The Plaintiffs' Complaint refers to the Acquisition Agreement in multiple paragraphs, so there can be no doubt that Plaintiffs' claims arise out of and relate to the benefits of that Agreement. It would thus be inequitable to allow Plaintiffs to pursue claims deriving from the Agreement and yet permit them to avoid the arbitration provision.

Finally, although he is not a signatory, Defendant William Canfield joins in this motion to enforce the arbitration clause. Just as a non-signatory is bound to arbitrate a claim arising from an agreement containing an arbitration provision, a non-signatory officer of a signatory corporation may compel arbitration when the disputed actions are intertwined with his duties to the corporation.  *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (holding non-signatory

corporate officers sued in their individual capacity could, under agency principles, invoke the arbitration agreement between the plaintiff and the corporate defendant for conduct that occurred during their official corporate duties and capacities); *see also Smith*, 2006 U.S. Dist. LEXIS 31935 at *20 (holding arbitration can be compelled in situations where the allegations against a non-signatory and signatory are based on the same facts and are inherently inseparable and intertwined and the non-signatory exercises considerable control over the signatory's activities); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 562 (M.D.N.C. 2004) (concluding non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under principles of contract and agency law).

Canfield is the CEO of TALX.  As an officer of TALX, his actions in connection with the Denny Employment Arrangement were conducted in his corporate capacity. Because the claims against him stem from his actions relating to running the business, Canfield may also invoke the arbitration provision with TALX to compel the Plaintiffs to arbitrate.

## CONCLUSION

For all of the foregoing reasons, the Court finds that the plaintiffs are bound by the arbitration provision in the Acquisition Agreement.  IT IS THEREFORE ORDERED that the defendants' motion to compel is hereby GRANTED.  The Plaintiffs shall be required to pursue their claims, if at all, by way of arbitration.  IT

IS FURTHER ORDERED that this action be DISMISSED *without prejudice* to the right of either party to refile following arbitration in order to enforce the award of the arbitrators.

      IT IS SO ORDERED.

                                                                 G. ROSS ANDERSON, JR.
                                                                 UNITED STATES DISTRICT JUDGE

March 6, 2007

Anderson, South Carolina